## VAIMAONOA FOLOI, ARIETA VAIMAONA, LAGIMA VAIMAONA, and TAU FUIAVA, Plaintiffs

v.

## FA'AMAMAFA TUITASI, Defendant

High Court of American Samoa
Land and Titles Division

LT No. 18-88

August 28, 1989

Before REES, Associate Justice, OLO, Associate Judge, and VAIVAO, Associate Judge.

Counsel: For Plaintiffs, Togiola T.A. Tulafono
For Defendant, Charles V. Ala'ilima

The Court finds the facts to be as follows:

1) Plaintiff Vaimaona Foloi is the senior matai of the Vaimaona family of the village of Lauli'i. The other plaintiffs are members of the Vaimaona family.

68

2) Defendant Fa'amamafa Tuitasi is also a member of the Vaimaona family.

3) On or about December of 1977, plaintiff Vaimaona Foloi executed a warranty deed conveying a certain portion of the Vaimaona communal land called Mulipa to defendant Tuitasi.

4) Defendant Tuitasi then undertook to register the tract as her own individual land. The record does not reflect whether, before or during this initial attempt at registration, defendant Tuitasi or plaintiff Vaimaona Foloi attempted to secure approval of the conveyance by the Land Commission and the Governor, as is required by A.S.C.A. §§ 37.0201 et seq. for the alienation of communal land.

5) When plaintiff Arieta Vaimaona learned of the warranty deed and of the pending registration procedure, she complained to various government officials including the then-Acting Governor. The record does not reflect that any formal action was taken by the Registrar, the Land Commission, or anyone else to deny the registration. All parties agree, however, that Ms. Vaimaona's efforts somehow resulted in the destruction or disappearance of the original copy of the warranty deed.

6) At a meeting of the Land Commission either on September 28, 1987, or shortly before that date, plaintiff Vaimaona Foloi appeared personally before the Commission to seek its approval of his conveyance of the land to defendant Tuitasi. Members of the Commission asked him if he had consulted with his family about the transaction, and he said he had not. Members of the Commission then recommended that he not alienate the land without consulting with his family, and also suggested that a separation agreement in favor of Ms. Tuitasi would be far preferable to an outright conveyance.

7) Either later the same day or at a subsequent meeting of the Commission, Vaimaona Foloi returned to the Commission and reiterated his request for Commission approval of the conveyance to Ms. Tuitasi. This time, at a meeting held on September 28, 1987, the Commission approved the conveyance.[1]

---

[1] One member of the Commission who testified at trial, Western District Governor Tuitele Le'oso, remembered only the first meeting at which the members of the Commission advised Vaimaona not to convey the land. Another member of the Commission, former Manu'a District Governor Soli Aolaolagi, testified to the subsequent appearance of Vaimaona before the Commission and the decision to approve his request.

8) On October 2, 1987, the conveyance was approved in writing by then-Governor A.P. Lutali. (This was done by signing a copy of the warranty deed.)

9) Meanwhile, on August 6, 1987, defendant Tuitasi had offered the deed for registration as her individually owned land. Notice of the offer of registration was posted at the Court House and at two public places in Lauli'i as required by law, and on October 20, 1987, no objection having been filed to the proposed registration, the Territorial Registrar recorded the land as the individually owned property of defendant Tuitasi.

It is the conclusion of the Court that the land is the individually owned property of defendant Tuitasi.

Plaintiffs' complaint alleges that the defendant defrauded Vaimaona into thinking he was signing something other than a warranty deed. Then she is alleged to have waited ten years and snuck the conveyance past the Land Commission without the knowledge of any of the plaintiffs. Far from proving any of this, the evidence establishes that Vaimaona was specifically advised by members of the Land Commission of the nature of the conveyance yet reiterated his request that it be approved.

It does appear that plaintiff Vaimaona, the sa'o of the family, acted under the influence of the forceful personality of defendant Tuitasi. It also appears that Vaimaona and others, including whoever improperly removed or destroyed the original copy of the deed, have been influenced at times by the equally forceful personality of plaintiff Arieta Vaimaona. Such influence does not render null and void the otherwise lawful actions of the sa'o, the Land Commission, the Governor, and the Territorial Registrar.

If there was any fraud in this case it was by the sa'o himself against the members of the family who should, in accordance with Samoan custom, have been consulted before any family land was alienated. This is not, however, an action by such family members

---

The official minutes of the Commission, attested by its secretary Territorial Registrar Pelema Kolise, confirm the Commission's approval of the conveyance on September 28, 1987. The evidence therefore clearly preponderates in favor of Vaimaona's reiteration of his request and the Commission's ultimate approval thereof, although the record does not reflect whether the two appearances happened on the same or different days.

against the sa'o; he appeared in this case as a plaintiff rather than a defendant. Aggrieved family members might well prove their entitlement to an accounting from the sa'o, to compensation for any lands previously assigned to them that were alienated to Ms. Tuitasi, and possibly even to removal of Vaimaona from his matai title. They could not, however, secure the invalidation of the record title to the land. Although the real property statutes of American Samoa provide numerous safeguards in an effort to deter the alienation of communal land when such alienation would not be in accordance with tradition, a matai who is really determined to ignore tradition --- and who secures the approval of the Land Commission and the Governor and complies with all other statutory procedures --- is legally free to do so.

Finally, any objections to the registration of this land as the individual land of defendant Tuitasi come too late. A.S.C.A. §§ 37.0101 et seq., require that such objections be made within sixty days of an offer of registration or be forever barred. *See Ifopo v. Siatu'u*, AP 12-89 (July 12, 1989). In this case, as in most other collateral attacks on land registration, those who would invalidate the registration testified that they never saw the notices posted. Such testimony is insufficient to meet the heavy burden of proving that the Registrar ignored his sworn duty when he recorded Ms. Tuitasi's title to the land. *See Ifopo, supra*. In the present case the plaintiffs did not even call the Registrar or any member of his staff as a witness on the question of posting. In the absence of clear and convincing evidence to the contrary, the official record stands.

For the foregoing reasons, the action is dismissed.[2] It is so ordered.

VAIVAO, J., concurring in part and dissenting in part:

Although the decision of the Court is correct according to the law, the sa'o should never have alienated this communal land without consultation and consent of the family.

The Fono has recently enacted an amendment to A.S.C.A. § 37.0103 that will prevent the registration of land unless the proposed

---

[2] The foregoing are the findings and conclusions of the Associate Justice, who presided at trial. The judges have conferred on this matter and judgment is being entered today in accordance with A.S.C.A. § 3.0241(a). The Associate Judges have not, however, had the opportunity to review the written opinion of the presiding judge, and reserve the right to concur, to dissent, or to join in the opinion.

registration has been advertised at least twice in a local newspaper. Public Law No. 21-1. This law will go a long way toward solving the problems presented by cases like this one. The Fono should also provide, however, that the Land Commission may not approve the alienation of communal land unless it is satisfied that there has been full consultation with the whole family and that the family consents to the alienation. Indeed, the Fono should strongly consider an outright prohibition on the further alienation of communal land.

I concur in the judgment, because the law allows the Court no choice in the present case. But I strongly disagree with the law insofar as it allows any alienation of communal land except in strict accordance with Samoan custom.

(Rees, J., joins in this separate opinion.)